# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: L.W., R.W., and I.H.**

**No. 13-0635** (Taylor County 12-JA-15, 12-JA-16, and 12-JA-17)

**FILED**

**January 17, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Father, by counsel Robert Colaizzi[1], appeals the Circuit Court of Taylor County's May 24, 2013, order terminating his parental rights to I.H.[2] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Mary Nelson, filed a response on behalf of the child also supporting the circuit court's order. On appeal, Petitioner Father alleges that the circuit court erred by: (1) denying Petitioner Father an improvement period; (2) finding that the DHHR did not have an affirmative duty to investigate Petitioner Father's home and attempt to reunify the family pending the filing of the DHHR's initial request for emergency custody; and (3) finding that Petitioner Father failed to take responsibility for the infant's injuries and provide credible explanations as to the cause of the injuries.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit courts order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]By order entered on July 26, 2013, this Court granted Robert Colaizzi leave to practice *pro hac vice* before this Court in the above-captioned proceeding pursuant to Rule 8 of the Rules for Admission to the Practice of Law and Rule 3(c) of the Rules of Appellate Procedure.

[2]Petitioner is the biological father of I.H. Other children who are not petitioner's biological children were involved in the abuse and neglect proceedings below. Petitioner raises no argument in regard to these children; therefore, the Court will address only the circuit court's rulings in regard to I.H. Because this matter concerns infant children, we follow our traditional practice in cases involving sensitive facts and use only the parties' initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

On August 16, 2013, Petitioner Father and the mother took their three-month-old infant, I.H. to the hospital.[3] The same day, Child Protective Services received a referral from Grafton City Hospital because the infant was diagnosed with multiple unexplained injuries. Due to the extent of I.H.'s injuries he was transported to Ruby Memorial Hospital in Morgantown, West Virginia, for further evaluation. It was determined that I.H. had three broken ribs, a medium to large subdural hematoma on his forehead with fluid underneath, bruising above his right eye and his chin, a right leg femur fracture, a circular lesion on the head of his penis, bilateral palm injuries, and blood vessel hemorrhages of the right eye. The DHHR took emergency custody of the child.

The next day, the DHHR filed an "Imminent Danger Petition After Emergency Taking" based upon the infant's serious, unexplained injuries. The circuit court ratified the immediate temporary transfer of custody by order entered on August 17, 2012, and scheduled a preliminary hearing on August 27. At the conclusion of the preliminary hearing, the circuit court concluded that the infant should remain in the DHHR's custody.

The circuit court took in-camera testimony from I.H.'s siblings, R.W. and L.W.[4] R.W. testified that he witnessed Petitioner Father injure I.H.'s leg while Petitioner Father was giving I.H. a bath.[5] L.W. testified that Petitioner Father spanked him on the face, the nose, top of the head, and on his hand. L.W. testified that Petitioner Father hit R.W. and I.H. in the face and hit I.H. in the chest.

During the adjudicatory hearing conducted on October 23, 2012, the circuit court heard conflicting testimony from several witnesses. The mother testified that she was unaware of how I.H. broke his femur until October 1, 2013, when Petitioner Father explained that he may have injured I.H. while he was giving him a bath on August 15, 2013. Dr. John Lubicky, the infant's treating physician, was qualified as an expert in pediatric orthopedics. He testified that the infant suffered from a "bucket fracture" of his right femur. Dr. Lubicky testified that a "bucket fracture" is normally the result of "non-accidental trauma," and is generally caused by twisting the leg, not by applying pressure to it. Dr. Lubicky testified that the femur fracture was "healing quite a bit" and occurred at least seven to ten days before he examined I.H. Dr. Lubicky testified

---

[3]The mother is appealing the circuit court's order terminating her parental rights to L.W., R.W., and I.H in West Virginia Supreme Court of Appeals Docket No. 13-0651.

[4]L.W. was approximately three years old when the petition was filed. R.W. was approximately six years old when the petition was filed.

[5]According to R.W., he was watching cartoons and witnessed I.H. hit his leg on the bathroom sink, which caused I.H.'s leg to bleed, while Petitioner Father was giving I.H. a bath. Petitioner Father asserts that he was giving I.H. a bath in the sink when he became distracted by the other children, who were taking a bath in the same room, when I.H. began to slide deeper into the sink.

that I.H. also suffered from broken ribs and fractures of the fibula and tibia. Dr. Lubicky testified that these fractures did not recently occur, because they were in different phases of healing.[6]

Petitioner Father testified that "he sort of slammed his hand down on [the infant's] leg . . . and denied grabbing or twisting [the infant's] leg." Petitioner Father testified that the lesion on the infant's penis was "the result of his circumcision." Beth Kochka, an emergency room nurse at Grafton City Hospital, testified that the injuries to I.H.'s penis included wounds to the shaft and were not typical of a circumcision. Petitioner Father also testified that the bruises or abrasions on the infant's palms could have occurred because "[I.H.] squeezes his hands. And he always has his hands really tight and both of his palms are really tight." Again, Nurse Kochka testified that the palm injuries had a specific shape and could not be caused by a three-month-old infant. As to the infant's hemorrhages, Petitioner Father initially testified that the infant bumped his eye on the faucet while he was giving the infant a bath, but on redirect examination, Petitioner Father testified that he bumped the infant's head on the car seat.

After considering all of the testimony, the circuit court ruled that the infant was an abused and neglected child and that Petitioner Father was an abusive and neglectful parent. The circuit court found by clear and convincing evidence that the infant was the victim of multiple instances of child abuse. Additionally, the circuit court found Petitioner Father's testimony "[was] not credible or believable," his explanations for the infant's injuries "[were] not consistent with the expert medical testimony," and Petitioner Father "[has] not accepted any responsibility." Furthermore, the circuit court denied Petitioner Father's motion for a post-adjudicatory improvement period.

On November 29, 2012, the circuit court held a dispositional hearing and heard additional testimony. Carolyn Jones, a parenting instructor with Family Services, testified that Petitioner Father did not offer any plausible explanation for the infant's injuries. At the conclusion of the hearing, the circuit court terminated Petitioner Father's parental rights. It is from this order that Petitioner Father appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[6]Dr. Lubicky also testified that a magnetic resonance image of the infant's brain revealed "some abnormalities."

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

With this standard in mind, we turn to Petitioner Father's assignments of error. First, Petitioner Father argues that the circuit court erred in denying him an improvement period and failed to find that the conditions of abuse and neglect could not be substantially corrected in the near future. This Court instructed circuit courts to not unnecessarily extend abuse and neglect proceedings when it held that

> "Courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In Re: R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.* This Court has also held

> "'in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.' *West Virginia Dept. of Health and Human Resources v. Doris S.*, 197 W.Va. 489, 498, 475 S.E.2d. 865, 874 (1996)."

*In the Interest of Kaitlyn P.*, 225 W.Va. 123, 126, 690 S.E.2d 131, 134 (2010).

Pursuant to West Virginia Code § 49-6-12, a respondent parent bears the burden of proving that he or she will substantially comply with an improvement period; consequently, the circuit court has the discretion to deny an improvement period if the circuit court finds that this burden has not been met. In its order, the circuit court noted that Petitioner Father failed to accept responsibility for the infant's injuries, could not explain the infant's injuries, and failed to identify the alleged "perpetrator(s)." Petitioner Father has offered no evidence to refute these findings. For these reasons, it is clear that Petitioner Father failed to establish, by clear and convincing evidence, that he would fully participate in an improvement period, and it was not error for the circuit court to terminate his parental rights without granting him an improvement period.

According to Petitioner Father, the circuit court failed to find that the conditions of abuse and neglect could not be substantially corrected in the near future. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are instructed to terminate parental rights upon these findings. We have previously held that

Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

Syl. Pt. 3, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

While the circuit court's dispositional order did not specifically conclude that there was no reasonable likelihood that Petitioner Father could substantially correct the conditions of abuse or neglect in the near future, we decline to grant Petitioner Father relief because the evidence of record and the circuit court's findings clearly demonstrate that there is no reasonable likelihood these conditions could be corrected. The circuit court's order included findings that the infant sustained multiple, severe, unexplained injuries for which neither parent accepted responsibility nor identified a perpetrator(s). For all the reasons stated above, we find no error in the circuit court's decision to terminate Petitioner Father's parental rights without an improvement period.

Second, we disagree with Petitioner Father's argument that the DHHR had an affirmative duty to attempt to investigate his residence and attempt to reunify the family pending the filing of the initial "Imminent Danger Petition After Emergency Taking." Petitioner Father argues that the testimony and the DHHR's case plan did not comply with Rule 28 of the Rules of Procedure for Child Abuse and Neglect Proceedings in that the DHHR failed to describe what services they provided or why such efforts to reunify would be unsuccessful.[7] Petitioner Father reasserts that the circuit court failed to find that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, and we disagree for the reasons stated above. Furthermore, pursuant to West Virginia Code § 49-6-3, the DHHR is not required to make efforts to preserve the family in emergency situations. The infant initially presented at the hospital with an unknown injury. After further examination, the infant was diagnosed with several broken bones and other unexplained injuries. The circuit court properly found that the infant's serious, unexplained injuries created "an emergency situation which made reasonable efforts to avoid removal from the home and preservation of the family unreasonable or impossible."

Finally, the Court finds no error in regard to the circuit court's finding that Petitioner Father failed to take responsibility for the infant's injuries or to provide credible explanations for the infant's injuries. This Court has previously held, "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and

---

[7]We decline to address Petitioner Father's specific argument that the DHHR failed to comply with Rule 28 of the Rules of Procedure for Child Abuse and Neglect Proceedings. Under Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, the Court "may disregard errors that are not adequately supported by specific references to the record on appeal." The record in this case is insufficient to address the merits of Petitioner Father's argument because the appendix record does not contain a copy of the infant's case plan.

rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)). "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). While Petitioner Father testified that he "slammed" his hand down on the infant's leg, he failed to account for the infant's other serious injuries. After hearing the evidence, the circuit court found that Petitioner Father's testimony conflicted with the expert medical testimony. Based upon our review, it is clear that the circuit court considered the evidence as a whole and was presented with sufficient evidence upon which to base its finding that Petitioner Father's testimony was "not credible or believable" and failed to provide "reasonable" and "logical" explanations for the infant's injuries. Because the findings of fact do not constitute clear error, they will not be disturbed on appeal.

This Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> The [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

Syl. Pt. 6, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Moreover, this Court has stated that:

> In determining the appropriate permanent out-of-home placement of a child under *W.Va.Code* § 49-6-5(a)(6) [1996], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.,* 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the

child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991).

      For the foregoing reasons, we find no error in the decision of the circuit court and the May 24, 2013, order is hereby affirmed.

      Affirmed.

**ISSUED**: January 17, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II