525 S.E.2d 669

**In re TRAVIS W.**

**No. 26640.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 1999.

Decided Dec. 7, 1999.

James Randall Rhodes, Esq., Martinsburg, West Virginia, Attorney for Appellant.

Christopher C. Quasebarth, Esq., Assistant Prosecuting Attorney, Martinsburg, West Virginia, Attorney for Appellee.

Nancy Dalby, Esq., Shepherdstown, West Virginia, Guardian ad Litem.

MAYNARD, Justice:

The appellant, Steve W., appeals the May 12, 1999 order of adjudication and disposition entered by the Circuit Court of Berkeley County, West Virginia. The appellant contends he received no notice that the circuit court would proceed immediately to disposition following the adjudication hearing. He also contends the West Virginia Department of Health and Human Resources (DHHR) did not file a child's case plan and that the circuit court wrongly determined he aban-

doned his child, Travis W. Because the West Virginia Rules of Procedure for Child Abuse and Neglect mandate that notice of the disposition hearing be provided, we reverse and remand.

The facts are essentially undisputed. Travis W. was born on September 29, 1997. His parents are Tessa F. and Steve W. In December 1998, DHHR filed two abuse and neglect petitions, designated 98–JA–35 and 98–JA–36, regarding Travis W. and Brandon F. respectively.[1] Case number 98–JA–35, involving Travis W., made no allegations against Steve W. but rather simply stated that he is the father of the child. DHHR filed an amended petition on January 25, 1999, which recited the allegations contained in the original petition and added a paragraph that alleged the appellant failed and is unable to provide Travis W. with necessary food, clothing, shelter, supervision, and medical care.

An adjudication hearing on the original petition was held on January 22, 1999. At that time, the mother of both children, Tessa F., voluntarily relinquished her parental rights to Travis W. and Brandon F. and both children were placed in the custody of DHHR. The appellant made no appearance. A disposition hearing regarding the rights of both fathers was set for February 11, 1999. The appellant made no appearance; however, his counsel objected to proceeding with the hearing because his client may not have received copies of the petition and the amended petition. DHHR moved for a continuance and the disposition hearing was continued until March 12, 1999. The State then published notice of the court proceedings; the ad in the Martinsburg Journal advised that an adjudication hearing would take place regarding case 98–JA–35 on March 12, 1999.

On March 5, 1999, DHHR filed a child's case plan for Travis W. with the court. The case plan was copied to all attorneys of record and recommended termination of the appellant's parental rights. The case plan further identified a permanency plan which "includes the child remaining in the physical

---

1. Tessa F. is also Brandon F.'s mother.

and legal custody of the maternal aunt[2] with leave to adopt." On March 12, 1999, the court dismissed the Brandon F. case, case 98–JA–36, because Brandon F. was placed with his maternal grandmother and further state intervention was not required.

On March 12, 1999, the court scheduled an adjudication hearing for Travis W. to take place on March 25, 1999. At that hearing, appellant's counsel filed a motion to dismiss alleging that: (1) the amended petition failed to state sufficient facts and allegations against Steve W.; (2) the final adjudicatory hearing was not held timely according to Rule 25 of the West Virginia Rules of Procedure for Child Abuse and Neglect; and (3) the amended petition was filed after the adjudication on the initial petition in contravention of Rule 19 of the West Virginia Rules of Procedure for Child Abuse and Neglect. The court granted the motion to dismiss.

A new petition, designated 99–JA–18, containing more specific allegations against Steve W. was filed on April 8, 1999. The petition alleged that Travis W.'s physical and mental health was threatened by the appellant's failure and inability to provide for the child; the appellant had only limited contact with the child since birth; the appellant has a history of physical abuse; and Tessa F. was residing with the appellant after voluntarily relinquishing her parental rights to the child.[3] DHHR was granted temporary legal and physical custody of Travis W. based upon the allegations in the petition and the proffers of Sharon Wiley, DHHR's agent. The temporary custody order appointed counsel for all of the parties and set the matter for an adjudication hearing on April 26, 1999.

All parties and counsel appeared at the adjudication hearing. The court heard testimony from several witnesses, then recessed and continued the matter due to the lateness of the day. All parties and counsel reconvened on May 10, 1999, at which time the court continued to hear testimony. At the conclusion of the hearing, the court deter-mined that the appellant had abandoned the child and that it was in the best interest of the child to terminate the appellant's parental rights and to allow the child to reside permanently with his great-aunt, Wendy H. On May 12, 1999, the court entered an order, titled "ORDER OF ADJUDICATION/DISPOSITION," which concluded that:

> the Respondent father is adjudicated as guilty of Abandonment of the infant child and his parental rights are hereby terminated. The Motion for Improvement Period filed on behalf of the Respondent Father is hereby denied.

**CUSTODY**

> Both legal and physical custody of the Respondent child shall remain [with] Wendy H. where his best interest is being served. Ms. H. shall be allowed to take necessary steps for adoption.

It is from this order that Steve W. appeals.

■ The standard of review we apply in abuse and neglect cases was stated in syllabus point 1 of *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), and was reiterated in·syllabus point 1 of *In re George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999), as follows:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence

---

**2.** Wendy H. is Travis W.'s maternal great-aunt with whom the child has lived for all but approximately six months of his life.

**3.** As we previously stated, Tessa F. relinquished her parental rights to Travis W. in case number 98–JA–35.

is plausible in light of the record viewed in its entirety.

On appeal, the appellant contends the circuit court erred by: (1) terminating his parental rights without conducting a disposition hearing; (2) proceeding to disposition without requiring DHHR to file the child's case plan; and (3) finding the child was abandoned. The initial issue which we must resolve is whether the circuit court erred by failing to follow procedural rules when the court terminated the appellant's parental rights without providing notice of the disposition hearing.

W.Va.Code § 49–6–5 (1998) controls the disposition of neglected or abused children and states in pertinent part:

> (a) Following a determination pursuant to section two [§ 49–6–2] of this article wherein the court finds a child to be abused or neglected, the department shall file with the court a copy of the child's case plan, including the permanency plan for the child. . . . The court shall forthwith proceed to disposition giving both the petitioner and respondents an opportunity to be heard.

The Rules of Procedure for Child Abuse and Neglect require that notice of the disposition hearing be provided. Rule 31 states that "[n]otice of the date, time, and place of the disposition hearing shall be given by the court to all parties, their counsel, and the CASA representative, if one was appointed." Rule 32 sets forth the time frame for the disposition hearing and provides for accelerated disposition hearings, but only after certain enumerated requirements have been met. This rule reads as follows:

> (a) *Time frame.*—The disposition hearing shall commence within forty-five (45) days of the entry of the final adjudicatory order unless an improvement period is granted pursuant to W. Va.Code § 49–6–12(b) and then no later than sixty (60) days.
>
> (b) *Accelerated disposition hearing.*—The disposition hearing immediately may follow the adjudication hearing if:
>
> (1) All the parties agree;

> (2) A child's case plan meeting the requirements of W. Va.Code §§ 49–6–5 and 49–6D–3 was completed and provided to the court or the party or the parties have waived the requirement that the child's case plan be submitted prior to disposition; and
>
> (3) Notice of the disposition hearing was provided to or waived by all parties as required by these Rules.

▮ In the case at bar, the circuit court conducted the adjudication hearing on two separate dates. The hearing commenced on April 26, 1999. At the close of the hearing, the court entered an order of partial adjudication which concludes by stating that "[d]ue to the lateness of the day **it is hereby Adjudged And Ordered that:** This matter shall come on for continuation of the Adjudicatory Hearing on May 10, 1999 at 4:00 p.m." The court reconvened the adjudication hearing on May 10, 1999. No one contends the appellant was provided with notice that the court would proceed to disposition at the conclusion of the adjudication hearing. DHHR argues instead that the appellant cannot object to immediate disposition for the first time on appeal after failing to object during the hearing and that the best interests of the child were promoted by immediate disposition. The guardian ad litem reasons the court did not err in terminating the appellant's · parental rights at the close of the adjudication hearing without conducting a disposition hearing because the appellant was found to have abandoned the child.

We are not persuaded by either of these arguments. The appellant avers that the court provided no notice, either before or during the hearing, that disposition would take place at the close of the adjudication hearing. Thus, says the appellant, he had no opportunity to object prior to the court's announcement of termination. He states that he objected to the ruling as soon as the court stated its intention. The order reflects this by stating, "The respondents objection to all adverse ruling[s] are noted by the Court[.]"

Pursuant to Rule 46 of the West Virginia Rules of Civil Procedure, this issue is preserved for appeal. Rule 46 reads as follows:

Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party.

This rule was explained in syllabus point 1 of *Konchesky v. S.J. Groves and Sons Co.*, 148 W.Va. 411, 135 S.E.2d 299 (1964), which states:

Rule 46 of the West Virginia Rules of Civil Procedure provides that in lieu of a formal exception it is sufficient if a party against whom a ruling or order is made opposes the action taken by the court at the time it is made and indicates the action which he desires, or, if such party did not have an opportunity to object at the time any ruling or order was made by the trial court on a motion of the opposing party, no objection or exception is required and an appellate court may consider the alleged error even though no formal objection or exception was made or taken.

We do not have the advantage of the transcript of the hearing on appeal. Therefore, we cannot search for specific objections. Nonetheless, the court noted the appellant's objection to all adverse rulings and would not have done so if the appellant had not opposed the action taken by the court. As the objection complies with Rule 46, we will consider the merits of the alleged error.

 We believe the judge determined the result would be the same regardless of whether he proceeded immediately to disposition after the adjudicatory hearing or held a separate disposition hearing. According to W.Va.Code § 49-6-5(a)(6) (1998), adoption cannot take place until all proceedings for termination of parental rights are final.

Rather than continuing to hold the child in limbo, the judge decided that immediately instituting the permanency plan was in the child's best interest. Under the facts of this case, we do not disagree. However, the court's action does not comply with the rules in that the appellant was not provided with notice of the hearing. Notice is mandatory. Rule 31 provides that notice *shall* be given by the court.[4] Rule 32 provides that the court may hold an accelerated disposition hearing immediately following the adjudication hearing but only if the parties agree, the case plan was submitted or the requirement that the case plan be submitted prior to disposition was waived, and notice was provided or waived. It is not disputed that these requirements were not met in this case. The appellant contends that he was utterly surprised by the court's decision to terminate his rights. The circuit court must hold a disposition hearing which complies with these rules.

 Pursuant to statutory law and the rules of procedure, circuit courts must provide the parties with notice of the disposition hearing prior to actually holding the hearing. We, therefore, hold that in conformance with Rule 31 of the West Virginia Rules of Procedure for Child Abuse and Neglect, notice of the date, time, and place of the disposition hearing must be given by the court to all parties, their counsel, and the CASA representative, if one was appointed. We further adjudge that pursuant to Rule 32, circuit courts may hold accelerated disposition hearings immediately following adjudication hearings if: (1) the parties agree; (2) the child's case plan which meets the requirements of W.Va.Code §§ 49-6-5 and 49-6D-3 is provided to the court or the party or the parties waive the requirement that the child's case plan be submitted prior to disposition; and (3) notice is provided or waived.

The child's case plan is not as problematic. W.Va.Code § 49-6-5(a) dictates that a child's case plan must be filed with the court when a child is found to be abused or neglected. This code section also contains a detailed definition of "case plan" by stating:

---

**4.** This Court has previously held that the word "shall," in the absence of language showing a contrary intent, will be afforded a mandatory connotation. *See* Syllabus Point 1, *Nelson v. W.Va. Public Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982).

(a) Following a determination pursuant to section two [§ 49-6-2] of this article wherein the court finds a child to be abused or neglected, the department shall file with the court a copy of the child's case plan, including the permanency plan for the child. The term case plan means a written document that includes, where applicable, the requirements of the family case plan as provided for in section three [§ 49-6D-3], article six-d of this chapter and that also includes at least the following: A description of the type of home or institution in which the child is to be placed, including a discussion of the appropriateness of the placement and how the agency which is responsible for the child plans to assure that the child receives proper care and that services are provided to the parents, child and foster parents in order to improve the conditions in the parent(s) home, facilitate return of the child to his or her own home or the permanent placement of the child, and address the needs of the child while in foster care, including a discussion of the appropriateness of the services that have been provided to the child. The term permanency plan refers to that part of the case plan which is designed to achieve a permanent home for the child in the least restrictive setting available. The plan must document efforts to ensure that the child is returned home within approximate time lines for reunification as set out in the plan. Reasonable efforts to place a child for adoption or with a legal guardian may be made at the same time reasonable efforts are made to prevent removal or to make it possible for a child to safely return home. If reunification is not the permanency plan for the child, the plan must state why reunification is not appropriate and detail the alternative placement for the child to include approximate time lines for when such placement is expected to become a permanent placement. This case plan shall serve as the family case plan for parents of abused or neglected children. Copies of the child's case plan shall be sent to the child's attorney and parent, guardian or custodian or their counsel at least five days prior to the dispositional hearing.

In the case at bar, a child's case plan was not submitted on Travis W.'s behalf when the new petition was filed; however, a case plan was submitted to the court in the companion case, 98–JA–35. That plan was copied to all the parties involved in Travis W.'s case. The appellant, the department, and the guardian ad litem attached a copy of the case plan to the briefs they submitted to this Court on appeal. The appellant attended the hearings which were held in the companion case. That case was dismissed for procedural reasons and the petition which was filed in this case is substantially, if not completely, identical to the dismissed petition. The permanency plan included in the case plan is the plan adopted by the court. We believe the parties were aware the child's case plan remained in full force and effect after the companion case was dismissed.

Moreover, DHHR suggests that if the judge had asked for a new case plan, the department would simply have copied the plan which was submitted in the companion case and would have resubmitted it to the court, causing needless procedural delay. Even though that is true in this case and does not constitute reversible error, the better practice for circuit courts to follow is to require that a child's case plan be filed in each and every child abuse and neglect action that is instituted.

█ The appellant does not strongly contend the court erred in finding he abandoned the child. His entire argument to this Court consists of the following:

Appellant testified that he lived with the mother of the child for approximately the first six months of the child's life and that he was very involved in the care of the child. This testimony was corroborated by testimony from the child's mother. The Appellant further testified that the child's mother moved out with the child, and that, for many months she would not disclose her whereabouts to him. Appellant saw the child on occasion, mostly when the mother would come to visit, from the time she moved out, until the Department's involvement. Once Appellant became aware of the abuse and neglect proceedings, he participated and tried to gain custody of the child until the final order was entered.

The child was not abandoned by Appellant, and the Court's ruling on that matter is clearly wrong.

The following people testified before the circuit court: Terry M., Travis W.'s maternal grandmother; Wendy H., the child's guardian and caretaker; Tiffany H., Wendy's daughter; Sharon Wiley, agent of DHHR; and the appellant. In its order of partial-adjudication, the court summarized the testimony of each of these witnesses. Terry M. testified that, to her knowledge, the appellant had seen Travis W. just two times in more than a year. She testified that she had seen the appellant assault Tessa F. and she herself had been hit by Steve W. Wendy H. testified that Travis W. had been in her physical care for thirteen months; during that time, the appellant had seen the infant two times. She testified that the appellant provides no support for the child, and she heard him say, "If he couldn't have Tessa he really didn't want Travis."

Tiffany H. testified that the appellant "slammed" Brandon F. to the ground when the child was six or seven months old and the appellant was annoyed with him for crying. Sharon Wiley testified that she had not spoken with the appellant, but she was aware of another case in which the appellant had abandoned his child, Brian W., on three different occasions. She also stated that the terminated mother had said that she was trying to get the children back through this proceeding. Ms. Wiley noted that there is evidence that Brian W. sexually abused Brandon F.

The appellant testified that he had pushed Tessa F. in anger. She then fell against her mother, cutting Terry M.'s lip. He testified that he had seen Travis W. six or seven times during the months he did not live with him. He admitted he may have said he did not want Travis W. but did not mean it. He stated he had not abused his children. He admitted he has not sought visitation with Travis W. nor has he paid child support. He also testified that he has been employed for almost two years and can financially support the child.

Based on these representations, the court made the following findings of fact in its final order:

The Respondent Mother lives in an apartment owned by and on the same premises as the Respondent Father;

The Respondent Father was convicted of a domestic battery in his ex-wife in August 1996;

There has been testimony of violence by the Respondent Father against Tessa F. and her mother;

The Respondent Mother and Father lived together again after the Respondent Mother relinquished her parental rights;

The Respondent Mother made the statement that she would try to get her child back;

The Respondent Father made the statement that if he could not have Tessa F., he did not want Travis;

The Respondent Father was not interested in any proceedings concerning his son Travis or visiting his son until the Respondent Mother relinquished her parental rights.

The court then concluded that Travis W. is an abandoned child. Based on the representations made to the trial court, we cannot say the court erred in reaching this conclusion. During the time the appellant was absent from Travis W.'s life, the child suffered spiral fractures of both legs, severe burns on his face, and numerous cuts and bruises. The appellant admits he made little or no attempt to contact the child and offered no support.

We believe the record shows the appellant abandoned Travis W. and that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected. W.Va.Code § 49–6–5(a)(6) (1998) provides that courts should terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child[.]" Furthermore, "[f]or purposes of the court's consideration of the disposition custody of a child pursuant to the provisions of this subsection the department is not required to make reasonable efforts to preserve the family if the court determines: (A) The parent has subjected the child to aggravated circumstances which include abandonment[.]" W.Va.Code § 49–

6–5(a)(7)(A) (1998), in part. The end result of this case will doubtless be the same regardless of whether or not the court provides notice of and holds a disposition hearing. However, neither this Court nor circuit courts can simply ignore mandatory procedural requirements. Circuit courts simply must comply with statutory law and the rules of procedure.

For the foregoing reasons, we affirm the finding of abandonment but reverse the disposition and remand for the circuit court to conduct a disposition hearing which complies with W.Va.Code § 49–6–5 and Rules 31 and 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect.

Affirmed in part; reversed in part and remanded.

Judge GARY L. JOHNSON, sitting by temporary assignment.

Justice SCOTT did not participate.