# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: A.C. and O.C.

No. 15-0475 (Clay County 13-JA-44 & 13-JA-45)

**FILED**

**April 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father W.C., by counsel Wayne King, appeals the Circuit Court of Clay County's April 23, 2015, order terminating his custodial rights to seven-year-old A.C. and nine-year-old O.C. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Michael W. Absury Jr., filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in (1) finding that he physically abused one of the children, (2) terminating his custodial rights to the children, and (3) refusing to recognize that its finding of physical abuse was incorrect.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 26, 2013, the DHHR filed an abuse and neglect petition against petitioner based on allegations that he struck O.C. multiple times in the head and body, which resulted in facial bruising, on July 25, 2013. At a preliminary hearing on that petition, the circuit court heard testimony from an eye-witness who drove past petitioner's residence in Clay County, West Virginia, on July 25, 2013, when the alleged abuse occurred. The eye-witness described the scene as follows:

> I saw a grown man beating a child. Not smacking him, beating him. I blew my horn[,] and he did not stop. . . . I kept blowing and blowing my horn. He quit. I don't know if it was because of my horn, but the man went back into the trailer and he, the little boy[,] was crying and following him and he turned—the man

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

turned around and with both hands up, pushed the little boy in the face, knocking him back down to the ground on his bottom.[2]

Thereafter, a DHHR worker testified that she saw redness and bruises on O.C.'s face on July 25, 2013, and that O.C. has autism. The DHHR worker further explained that the children's parents were homeless at the time of the hearing. While petitioner acknowledged that an incident occurred that could have been mistaken for abuse, he denied "beating" or otherwise intentionally harming his son. Petitioner maintained that he merely attempted to restrain his son, who was having a "fit." Petitioner further testified that he employed techniques he acquired in a program designed to teach parents of autistic children how to restrain them properly. At the conclusion of the hearing, the circuit court ordered that the children continue in the temporary custody of the DHHR pending an adjudicatory hearing.

In August of 2013, the circuit court held an adjudicatory hearing. At the outset of that hearing, without objection from any party, the circuit court took judicial notice of the evidence previously presented. Thereafter, petitioner testified and again denied "beating" O.C. Petitioner suggested that the injuries to O.C. occurred as the result of innocent means, such as an accident during playtime with other children or a skin condition from which he suffered. Based on the evidence presented, the circuit court found that petitioner physically abused O.C. and adjudicated him as an abusing parent.

In September of 2013, the circuit court held a dispositional hearing. At that hearing, based on the representations of the parties, the circuit court granted petitioner a six-month post-adjudicatory improvement period. To complete that improvement period, petitioner was ordered to find suitable housing and to comply with all services, which included parenting and adult life skills classes, domestic violence counseling, anger management classes, and random drug and alcohol screenings. Petitioner was also permitted weekly visits with the children.

In February of 2014, petitioner's improvement period was extended, and he received a post-dispositional improvement period in June of 2014. During the duration of his improvement periods, petitioner moved from Clay County, West Virginia, to Charleston, West Virginia, and made known his intention to move to either the State of Texas or the State of Kansas.[3]

In February of 2015, the circuit court held a final dispositional hearing. Petitioner was not present at this hearing, but his counsel moved to continue the matter on the basis that petitioner was in the State of New York receiving medical care. Based on petitioner's inability to attend the hearing, the circuit court granted the continuance.

---

[2]While petitioner argues in his brief to this Court that the eye-witness was "fifty (50) yards away" from petitioner and the child, he fails to support this stated distance with a specific citation to the record on appeal. Instead, petitioner supports this distance with a citation to the entire preliminary hearing ("See Appendix Pgs 19-80"). We have reviewed the record on appeal, and it does not appear from the record that the eye-witness stated her distance from the incident.

[3]It is unclear from the record on appeal why petitioner intended to move to another state.

In March of 2015, the circuit court held the continued final dispositional hearing. Petitioner again failed to appear. The DHHR worker testified that petitioner informed her that he had moved to the State of New Jersey and would not be returning "for quite some time." The DHHR worker also explained that, although petitioner had initially completed some services, he "did not want to focus on the material" in his parenting and adult life skills classes and discontinued services when he moved out-of-state.

Notably, petitioner had not seen his children since December of 2014, and had only maintained contact with them by telephone. At the conclusion of the hearing, the circuit court found no reasonable alternative to termination of petitioner's custodial rights to the children. The circuit court further ordered that petitioner would receive post-termination visitation once per month, if requested by petitioner with adequate notice. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first assigns error to the circuit court's finding that he physically abused then six-year-old O.C. While petitioner argues that the DHHR worker's testimony was insufficient to substantiate the allegations against him, he wholly ignores the eye-witness testimony that described in detail the "beating" O.C. received at petitioner's hands. As noted in our standard of review above, we "must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.* Further, we have long held that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (*citing* Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). In this case, the circuit court heard from an independent eye-witness who testified that petitioner "beat" then six-year-old O.C. about the face and body with his hands and pushed the child to the ground. The DHHR worker

then corroborated that account by her testimony that she witnessed redness and bruising on O.C.'s face on the day of the incident. The evidence was clearly sufficient to establish a finding of abuse, and the circuit court was uniquely situated to determine which version of events was credible. Based on the record presented, we find no merit to petitioner's first assignment of error.[4]

In his second assignment of error, petitioner argues that the circuit court erred in terminating his custodial rights to the children given that he complied with the terms of his improvement periods prior to his relocation to New Jersey. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare. West Virginia Code § 49-6-5(b) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

Here, the record on appeal does not support petitioner's factual contention that he substantially complied with the terms of his improvement periods or otherwise demonstrated a reasonable likelihood that he could substantially correct the conditions of neglect in the near future. To the contrary, it is clear from the record before us that petitioner failed to comply with the terms of his improvement period throughout the proceedings below. As reflected in the DHHR worker's testimony at the final dispositional hearing, petitioner participated in services in

---

[4]Petitioner's first and third assignments of error are substantially related. In his third assignment of error, petitioner argues that the circuit court should have recognized that its finding regarding the physical abuse was incorrect due to the child's autism. While we generally discuss related issues together, we find that petitioner failed to cite any legal authority in support of his third assignment of error. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on[.]" Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, Chief Justice Menis E. Ketchum specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Therefore, as petitioner failed to properly develop the issue for appellate review, we need not address petitioner's third assignment of error. As we have already determined, following a thorough review of the record on appeal, we note that the circuit court properly considered the evidence presented in arriving at its finding of physical abuse. We again note that the circuit court was uniquely situated to determine the credibility of petitioner's claim that he was properly physically restraining O.C. *See In re Emily*, 208 W.Va. at 339, 540 S.E.2d at 556 (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999); *see also Michael D.C.*, 201 W.Va. at 388, 497 S.E.2d at 538. As such, we find that the circuit court committed no error in this regard.

the beginning, but failed to fully comply with services while he resided in West Virginia; then, he stopped participating entirely when he relocated to New Jersey. Further, according to the testimony at the final hearing, petitioner "did not want to focus on the material" in his parenting and adult life skills classes.

The record on appeal also shows that, when petitioner moved to Charleston, West Virginia, in 2014 for employment, petitioner quit providing samples for random drug and alcohol screenings because he "did not feel that he needed to participate in drug screens because he was an employee at the jail[.]" Importantly, by the time of the final hearing, he had not visited with his children in person in several months. We have held that "the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W .Va. 57, 754 S.E.2d 743 (2014). Based on petitioner's failure to maintain compliance with the terms of his improvement periods and the violent nature of the underlying incident, the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and termination was in the children's best interests. As such, we find no error in the circuit court's termination of petitioner's custodial rights to the children.

For the foregoing reasons, the circuit court's April 23, 2015, order terminating petitioner's parental rights to the children is hereby affirmed.

Affirmed.

**ISSUED**: **April 12, 2016**


**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**VOLUNTARILY DISQUALIFIED:**

Justice Brent D. Benjamin