## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In Re*: Z.H. and N.H.

No. 16-0624 (Mercer County 14-JA-172-WS & 14-JA-173-WS)

**FILED**

**January 9, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.H., by counsel Gerald R. Linkous, appeals the Circuit Court of Mercer County's May 27, 2016, order terminating her parental, custodial, and guardianship rights to ten-year-old Z.H. and seven-year-old N.H. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), John Earl Williams Jr, filed a response on behalf of the children, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to require the DHHR to make a thorough effort to determine whether she could properly care for the children with intensive long-term assistance.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2008 and in 2011, petitioner successfully completed two treatment plans and regained custody of her children. However, in 2012, the DHHR filed yet another petition for abuse and neglect against petitioner alleging that she failed to provide appropriate supervision for her children. After approximately two years of services, petitioner successfully completed her improvement period and the case was dismissed by order entered in May of 2014.

Approximately seven months after the 2012 proceeding was dismissed, the DHHR received a referral that N.H. had an unexplained second-degree burn on his arm. During the investigation, N.H. told a DHHR worker that "mommy did it." Petitioner did not admit nor deny burning N.H. The DHHR also noted that petitioner has a history of mental health issues. The referral also stated that Z.H. witnessed petitioner being sexually assaulted in the home.

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

Importantly, Z.H. also told a DHHR worker that her uncle "comes into [Z.H.'s] room at night and tries to pull her pants down while she sleeps." Based upon these allegations, the DHHR filed a petition for abuse and neglect.

In March of 2015, the circuit court held an adjudicatory hearing during which it heard testimony from several witnesses. After considering the testimony and evidence, the circuit court held that petitioner neglected her children because she was "unable to provide a stable and appropriate home . . . or care for" her children.[2] The circuit court held petitioner's motion for a post-adjudicatory improvement period under advisement.

In April of 2016, the circuit court held a dispositional hearing during which it heard testimony from the psychologist who evaluated petitioner. The psychologist testified that, given that petitioner received three years of services with no improvement, she had an "extremely poor prognosis" for "positive change with regard to her ability to parent." The psychologist also explained that it's "highly unlikely that [petitioner will] be able to provide parenting effectively for children[.]" By order entered on May 27, 2016, the circuit court terminated petitioner's parental, custodial, and guardianship rights to his children. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law provides that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478,

---

[2]The circuit court technically adjudicated petitioner as a "neglectful parent." However, West Virginia Code § 49-1-201 defines an abusing parent as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Because the definition of "abusing parent" encompasses parents who have been adjudicated of abusing or neglecting a child, and because West Virginia Code § 49-1-201 does not contain a definition for "neglectful parent," we will use the term "abusing parent" in this memorandum decision.

525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner argues that the circuit court erred in failing to require the DHHR to make a thorough effort to determine whether she could properly care for the children with intensive long-term assistance. This Court has explained that

> [w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement.

Syl. Pt. 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999). Therefore, an effort to establish long-term assistance may be required in child abuse and neglect cases based on the "intellectual incapacity" of the parents.

In the case sub judice, the DHHR was not required to make a thorough effort to determine whether petitioner could care for her children with intensive long-term assistance because this is not a case based upon intellectual incapacity. To the contrary, the psychologist testified that given that petitioner received three years of services with no improvement, that petitioner had an "extremely poor prognosis" for "positive change with regard to her ability to parent." The psychologist also explained that it's "highly unlikely that [petitioner will] be able to provide parenting effectively for children[.]" There is no indication in the record on appeal that petitioner's mental health issues are equivalent to an intellectual incapacity as contemplated in *In Re: Billy Joe M*. Further, even assuming Syllabus Point 4 of *In Re: Billy Joe M.* applies to this case, the psychologist explained that petitioner was unlikely to make improvements after already receiving approximately three years of services. Therefore, given the circumstances of this case and the inability of intensive long-term assistance to correct the conditions of neglect or abuse, we find no clear error in the circuit court's order terminating petitioner's parental, custodial, and guardianship rights.

For the foregoing reasons, we find no error in the circuit court's May 27, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: January 9, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker