**FILED**
**October 28, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **C.W., T.W., P.W., and L.W.**

**Nos. 20-1032 & 21-0015** (Randolph County 19-JA-07, 19-JA-08, 19-JA-95, 19-JA-122)

## MEMORANDUM DECISION

In these consolidated matters, Petitioner Father S.W. ("Father"), by counsel Steven B. Nanners, and Petitioner Mother T.W. ("Mother"), by counsel J. Brent Easton (collectively "Petitioners"), appeal the Circuit Court of Randolph County's December 4, 2020, order terminating their parental rights to four children, C.W., T.W., P.W., and L.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The children's guardian ad litem, Gregory R. Tingler, filed a response on behalf of the children supporting the circuit court's order. The dispositive issue on appeal is whether the circuit court erred when it proceeded immediately to disposition after announcing its adjudicatory ruling on the issues of physical abuse and alcohol abuse. Petitioners objected to accelerated disposition.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure. After review, we find that the circuit court erred by proceeding immediately to disposition, over Petitioners' objection, after announcing its adjudicatory ruling. We reverse the circuit court's December 4, 2020, disposition order, and remand these matters to the circuit court with directions for it to hold a new disposition hearing consistent with our ruling herein.

In January of 2019, the DHHR filed a child abuse and neglect petition against Petitioners alleging that they had 1) physically abused the then ten-year-old child, C.W.,

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials to identify the parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

and 2) failed to provide proper medical care for the then nine-month-old child, T.W.[2] A DHHR worker interviewed C.W. at his elementary school in January of 2019. C.W. described extensive physical abuse Father inflicted upon him. These incidents of physical abuse included Father kicking him with steel toed boots and Father picking C.W. up by his ankle and dropping him on his head. In addition to this physical abuse, C.W. asserted that Father drank alcohol every night. He stated that Father "will drink and drive while him [C.W.] and his little brother [T.W.] are in the car along with [Mother]." Further, C.W. stated that "[Father] keeps the beer in the cooler in his truck and [Mother] does not say anything to him about drinking and driving." C.W. also reported that Father was verbally abusive and would often threaten him. One such threat, according to C.W., was Father telling him that "I'm going to knock your teeth out of your mouth."

Additionally, C.W. stated that Mother physically abused him including "squeezing his mouth shut so he couldn't speak. [C.W.] reported that he put his hand in her face to get her [to] stop and she 'bit me really hard.'" C.W. also provided that Mother bit him on his big toe. The DHHR worker who interviewed C.W. observed that he had marks on his "hand right below his pinky and also on his foot."

Following the interview at the elementary school, a forensic interview with C.W. was held at the children's advocacy center ("CAC") on January 24, 2019. During this interview, C.W. again described the physical abuse he had suffered and Father's alcohol abuse. This forensic interview was recorded.[3]

The abuse and neglect petition was amended multiple times between July and October of 2019. The first amended petition was filed in July of 2019, further detailing Petitioners' medical neglect of T.W., and describing the lack of prenatal care that Mother was seeking for an on-going pregnancy. The second amended petition was filed in August of 2019, citing Father's abandonment of P.W. A third amended petition was filed in September of 2019, adding another child, L.W., who was born during these proceedings.

_____

[2] Father is the biological father of all four children at issue in this case. Mother is the biological mother of T.W. and L.W. While Mother is not the biological mother of C.W., we note that C.W. was living with Petitioners at the time this petition was filed. Though Mother is not C.W.'s biological mother, for ease of the reader, we refer to her in this opinion as "Mother."

[3] As noted in the DHHR's abuse and neglect petition, [C.W.] "was previously forensically interviewed at the Randolph/Tucker CAC on April 26, 2016 and on July 22, 2016. [C.W.] made disclosures of physical abuse at each of these interviews as well."

Finally, the petition was amended in October of 2019, alleging that Father made statements to medical professionals illustrating his disinterest in the children.

The procedural history of this matter from November 2019 through December 2020 is convoluted and sometimes involved hearings that seemed to be simultaneously adjudicatory and dispositional in nature. We note that throughout these proceedings, there were four main allegations against Petitioners: 1) medical neglect; 2) Father's abandonment of P.W.; 3) physical abuse committed by both parents; and 4) Father's alcohol abuse.

The circuit court held an adjudicatory hearing on November 1, 2019. Petitioners filed written stipulations in which they agreed that they had abused and neglected the children by failing to seek appropriate medical care. However, as noted in the circuit court's subsequent order, Petitioners "are specifically denying any type of physical abuse and alcohol abuse issues. Further, paternity testing is not yet complete with regard to [P.W.][4] and the abandonment allegations are not yet ripe for adjudication." Based on Petitioners' stipulation to the medical neglect allegations, the circuit court adjudicated them of abuse and neglect.

Additionally, during this hearing the DHHR requested that the circuit court admit and review the three forensic interviews with C.W., including the January 2019 interview. The DHHR explained that these interviews were relevant to both the physical abuse and alcohol abuse issues. Petitioners did not object to the admission of these forensic interviews. Each of these interviews lasted for approximately one hour. The circuit court admitted these interviews and noted that "we'll set it for another hearing after I [have] had an opportunity to review it [the forensic interviews]." Based on the foregoing, the circuit court scheduled an additional adjudicatory hearing for December 16, 2019, "on the remaining allegations," i.e., 1) physical abuse, 2) alcohol abuse, and 3) the abandonment of P.W.

The circuit court held another adjudicatory hearing on December 16, 2019. According to the order entered following this hearing,[5] the DHHR presented one witness who testified regarding Father's abandonment of P.W. Further, the DHHR, relying on the forensic interviews, requested that the circuit court adjudicate Petitioners of physical abuse

---

[4] Father initially contested whether P.W. was his biological child. The results of the paternity test revealed that P.W. was Father's biological child.

[5] The order following this hearing was not entered until March 19, 2020. The appendix record does not include a transcript of the December 16, 2019, hearing.

and adjudicate Father of alcohol abuse. However, the circuit court had not reviewed the forensic interviews prior to this hearing. The circuit court's order provides, "[t]he Court's review of the forensic interviews is necessary prior to ruling on the requested additional grounds for adjudication." Because the circuit court had not reviewed the forensic interviews, it provided that it was taking the issues of physical abuse, alcohol abuse, and abandonment "under advisement."[6] While the circuit court did not enter an adjudicatory ruling on any of these issues, it ordered that a disposition hearing would be held in March of 2020.

The DHHR filed a motion to terminate Petitioners' parental rights on March 16, 2020. This motion noted that Petitioners had been adjudicated as "abusing and neglecting parent[s]," that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, and that termination was necessary for the welfare of the children. When the DHHR filed this motion, the circuit court had not entered adjudicatory rulings on the issues of physical abuse, alcohol abuse, or abandonment.

The circuit court held a disposition hearing on June 5, 2020.[7] When this disposition hearing was held, the only adjudicatory ruling the circuit court had entered was on the medical neglect issue. During this hearing, the DHHR called multiple witnesses who primarily testified to Petitioners' medical neglect of the children. Petitioners also testified during this hearing. They denied the physical abuse allegations. However, Father admitted to occasional physical discipline of C.W. Mother admitted that she bit C.W. on one occasion, but asserted that this was a reflex because C.W. hit her in the face. Petitioners both denied that Father abused alcohol. Regarding the abandonment issue, Father admitted that he had not provided emotionally or financially for P.W.

At the conclusion of this hearing, counsel for Petitioners requested that the circuit court grant them improvement periods. The DHHR and guardian ad litem requested that the court grant the motion to terminate Petitioners' parental rights. They both relied on 1) C.W.'s forensic interviews in which he described the physical abuse he suffered and Father's alcohol abuse; and 2) Petitioners' failure to acknowledge the physical abuse. The

---

[6] It is unclear why the circuit court took the abandonment issue "under advisement" because there had been testimony about this issue during the December 16, 2019, hearing and there was no indication that the forensic interviews with C.W. included information that would be relevant to determining whether Father had abandoned P.W.

[7] The disposition hearing was continued from its original date, March of 2020, due to the COVID-19 pandemic.

DHHR and guardian ad litem also argued that Petitioners had failed to fully acknowledge their medical neglect.

After hearing these arguments, the circuit court provided as follows:

There is a lot for the Court to consider in terms of, not only the medical testimony, the medical conditions that are present here, choices that the parents made . . ., the CAC [forensic] interviews of [C.W.], um, I – there is a lot of information the Court would have to put into the decision it would make in regard to, um, both the issue of the adjudication as well as the improvement period. I am going to take this . . . under advisement for a short period of time, put together my own order and identify the things that I think are important, and I will send a copy of that order to counsel and Department in the near future.

Over four months later, on October 20, 2020, the circuit court issued an order adjudicating Father "on grounds of abandonment" as to P.W. This order does not contain any specific findings of fact or conclusions of law. The order merely provides, "[t]he Court, having heard testimony and argument from all parties to this matter, does hereby FIND by clear and convincing evidence that, based upon the conditions existing at the time of the filing of the petition, the child [P.W.] is abused and neglected as defined in West Virginia Code § 49-1-201."[8]

The circuit court held another hearing on November 9, 2020. The DHHR noted that the adjudicatory rulings on the issues of physical abuse and Father's alcohol abuse were still pending. Counsel for the DHHR reminded the circuit court that it had previously stated that it needed to review C.W.'s forensic interviews before making an adjudicatory ruling on these issues. Petitioners asserted that their motions for improvement periods were under advisement and had not been ruled upon. The circuit court declined to rule on any of the outstanding issues at this hearing, explaining that "the CAC [forensic] interviews of [C.W.] I have not reviewed. So I want to review those before I have a chance to . . . make a decision in this case." Because the circuit court needed additional time to review the forensic interviews, it scheduled a hearing for November 19, 2020.

---

[8] Rule 27 of our Rules of Procedure for Child Abuse and Neglect Proceedings provides that a circuit court "shall make findings of fact and conclusions of law" in its adjudicatory order. *See* n. 10 *infra*.

During the November 19, 2020, hearing, the circuit court stated that it had reviewed the forensic interviews[9] of C.W. and found convincing statements that C.W. had been bitten by Mother, kicked by Father repeatedly, and had been repeatedly struck by both parents as a means of discipline, which had left bruising on C.W. The circuit court further found clear and convincing evidence of alcohol abuse, including Father driving a vehicle after drinking with the family in the vehicle, of which Mother was aware. Based on these findings, the circuit court adjudicated Petitioners on the issues of physical abuse and alcohol abuse.

After the circuit court announced its adjudicatory ruling, the DHHR asked the circuit court to deny Petitioners' motions for improvement periods and to terminate their parental rights. Father's counsel requested that the circuit court set the matter for a disposition hearing so that he could present testimony to support a motion for an improvement period. Mother's counsel also requested that the matter be set for a disposition hearing.

The circuit court found that an additional hearing was unnecessary. It explained that "I don't see the need for another continuance of this matter. It has been continued from dispositions back in June, and I think one other one[.]" By order entered on December 4, 2020, the circuit court terminated Petitioners' parental rights and denied Petitioners' motions for post-adjudicatory improvement periods. After entry of the circuit court's order, Petitioners filed the instant appeals.

This Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing

---

[9] While the circuit court reviewed all three forensic interviews, it stated that it was only relying on the 2019 interview because the two earlier interviews, recorded in 2016, were "several years prior to the filing of the petition, . . . [a]nd so I did not believe that they were pertinent to determining the situation that existed at the time the petition was filed in this matter."

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). With this standard in mind, we proceed to examine the parties' arguments.

The dispositive issue raised by Petitioners is whether the circuit court erred when it proceeded immediately to disposition after adjudicating Petitioners on the issues of physical abuse and alcohol abuse during the November 19, 2020, hearing. This issue requires us to examine when an accelerated disposition in an abuse and neglect case may occur. However, before addressing the accelerated disposition issue, we begin our analysis by noting the numerous procedural irregularities that occurred in these matters.

The circuit court heard testimony on the issue of abandonment during the December 16, 2019, adjudicatory hearing. It did not enter an adjudicatory ruling on this issue until October of 2020. The circuit court heard testimony on the issues of physical abuse and alcohol abuse during the June 2020 hearing. It did not announce its adjudicatory ruling on these issues until November 19, 2020. Rule 27 of our Rules of Procedure for Child Abuse and Neglect Proceedings requires an adjudicatory order to be entered within ten days of the adjudicatory hearing.[10]

---

[10] Rule 27 of our Rules of Procedure for Child Abuse and Neglect Proceedings provides:

> At the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i). The court shall enter an order of adjudication, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing, and the parties and all other persons entitled to notice and the right to be heard shall be given notice of the entry of this order.

7

Similarly, the circuit court violated Rule 36 of our Rules of Procedure for Child Abuse and Neglect Proceedings which requires a disposition order to be entered within ten days of the conclusion of the disposition hearing.[11]  The circuit court's June 5, 2020, hearing was purportedly a disposition hearing.  At the conclusion of the hearing, the circuit court informed the parties that it would issue an order in the "near future."  The circuit court's disposition order following the June hearing was not entered until December 4, 2020.

The delays in these matters were apparently caused by the circuit court's failure to review the three forensic interviews with C.W.  The three forensic interviews were each approximately one hour long.  These interviews were introduced by the DHHR at the November 1, 2019, adjudicatory hearing.  At that time, the circuit court set another adjudicatory hearing for December 16, 2019, stating "we'll set it for another hearing after I [have] had an opportunity to review it [the forensic interviews]."  However, the circuit court held adjudicatory and/or dispositional hearings in this matter on December 16, 2019, and June 5, 2020, and failed to review the forensic interviews prior to each of these hearings.

The circuit court's failure to review these interviews in a timely fashion demonstrated a complete disregard for our long-standing admonition that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). We have also recognized that "matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on

---

[11] Rule 36(a) of our Rules of Procedure for Child Abuse and Neglect Proceedings provides:

(a) Findings of Fact and Conclusions of Law; Time Frame. At the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition in accordance with the provisions of W. Va. Code § 49-4-604. The court shall enter a disposition order, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing.

a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible." Syl. Pt. 5, in part, *Carlita B.*[12]

Having addressed the general procedural irregularities that occurred throughout these matters, we now examine whether the circuit court erred when it proceeded immediately to disposition after adjudicating Petitioners on the issues of physical abuse and alcohol abuse during the November 19, 2020, hearing. Petitioners objected to accelerated disposition and requested that it be held at a later date. The circuit court denied this request, citing the previous continuances that had occurred. We find this ruling was erroneous.

Rule 32 of our Rules of Procedure for Child Abuse and Neglect Proceedings ("Rule 32") provides the time frame for when a disposition hearing shall occur, as well as the circumstances in which an accelerated disposition hearing may occur:

> (a) Time Frame. The disposition hearing shall commence within forty-five (45) days of the entry of the final adjudicatory order unless an improvement period is granted pursuant to W.Va. Code § 49-4-610(2) and then no later than thirty (30) days after the end of the improvement period.
> (b) Accelerated Disposition Hearing. The disposition hearing immediately may follow the adjudication hearing if:
> (1) All the parties agree;
> (2) A child's case plan meeting the requirements of W. Va. Code §§ 49-4-408 and 49-4-604 was completed and provided to the court or the party or the parties have waived the requirement that the child's case plan be submitted prior to disposition; and
> (3) Notice of the disposition hearing was provided to or waived by all parties as required by these Rules.

This Court examined Rule 32 in *In re Travis W.*, 206 W. Va. 478, 525 S.E.2d 669 (1999). The Court in *Travis W.* reversed and remanded a circuit court's disposition order because it did not comply with Rule 32. As the Court explained:

---

[12] Because we are reversing and remanding this matter for a disposition hearing due to the circuit court's failure to comply with Rule 32 of our Rules of Procedure for Child Abuse and Neglect Proceedings, we need not decide whether these delays and procedural irregularities constitute reversible error.

Rule 32 provides that the court may hold an accelerated disposition hearing immediately following the adjudication hearing *but only if the parties agree*, the case plan was submitted or the requirement that the case plan be submitted prior to disposition was waived, and notice was provided or waived. It is not disputed that these requirements were not met in this case. . . . *The circuit court must hold a disposition hearing which complies with these rules*.

*Id.* at 483, 525 S.E.2d at 674 (emphasis added).

Relying on Rule 32, the Court in *Travis W.* held:

Pursuant to Rule 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect, circuit courts may hold accelerated disposition hearings immediately following adjudication hearings if: (1) the parties agree; (2) the child's case plan which meets the requirements of W.Va. Code §§ [49-4-604 and 49-4-408] is provided to the court or the party or parties waive the requirement that the child's case plan be submitted prior to disposition; and (3) notice is provided or waived.

*Id.* at Syl. Pt. 3.

In the instant case, Petitioners did not agree to accelerated disposition after the circuit court announced its adjudicatory ruling on the physical abuse and alcohol abuse issues. Therefore, under the plain language of Rule 32, and our holding in *Travis W.*, we find that the circuit court erred by proceeding immediately to disposition. While the circuit court cited previous delays as the reason it denied Petitioners' requests to have a separate disposition hearing, these delays were caused by the circuit court's failure to review the forensic interviews in a timely fashion. The circuit court's failure to review the forensic interviews in a timely fashion does not provide a proper basis for disregarding the clear procedure set forth in Rule 32.

We have held:

Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting

order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. Pt. 5, *In re Edward B.,* 210 W. Va. 621, 624, 558 S.E.2d 620, 623 (2001).[13]

Based on the foregoing, we find that the circuit court erred by proceeding immediately to disposition after announcing its adjudicatory ruling on the issues of physical abuse and alcohol abuse. We therefore reverse the circuit court's December 4, 2020, disposition order and remand these matters back to the circuit court with directions for it to conduct a new disposition hearing.

Reversed and Remanded With Directions.

**ISSUED**: October 28, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[13] *See In re C.E.*, 2021 WL 1549970, *3 (memorandum decision) (April 20, 2021) ("We find that the process established by our rules has been substantially disregarded or frustrated such that the dispositional order must be vacated, in part, and the matter remanded for the holding of a new dispositional hearing[.]").