# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: B.S. and R.S.

No. 16-0648 (Mercer County 15-JA-6-D3 & 15-JA-7-D3)

FILED

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.F., by counsel John G. Byrd, appeals the Circuit Court of Mercer County's June 15, 2016, order terminating her parental rights to six-year-old B.S. and two-year-old R.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Andrea P. Powell, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that (1) she was erroneously penalized for relying on the requirements of the multidisciplinary team ("MDT"), and (2) the circuit court erred in terminating her parental rights to the children without employing a less-restrictive dispositional alternative.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2015, the DHHR filed an abuse and neglect petition against petitioner. In its petition, the DHHR alleged that petitioner abused controlled substances and, while driving intoxicated, wrecked her vehicle carrying her young children. The DHHR further alleged that, following the accident, petitioner was arrested for driving while intoxicated, child neglect

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

1

creating risk of injury, possession of a controlled substance, and other related offenses. At the time the petition was filed, petitioner was incarcerated on those charges. According to the DHHR, the arresting officer discovered needle marks on petitioner's arm and claimed that petitioner admitted to using drugs the night before the accident and earlier the same day. Following her arrest, petitioner tested positive for opiates and oxycodone.

In March of 2015, the circuit court held an adjudicatory hearing. At that hearing, petitioner stipulated to the abuse and neglect of her children. Thereafter, petitioner was granted a six-month, post-adjudicatory improvement period primarily designed to correct petitioner's substance abuse problem. To achieve that goal, petitioner was accepted into and began a substance abuse treatment program at the Redemption House in McDowell County, West Virginia.

In June of 2015, at a three-month review hearing on petitioner's improvement period, the DHHR worker, the guardian, and other parties, raised concerns about a lack of communication between the staff at Redemption House and the DHHR. Further, the DHHR worker stated that she had received an email from the Redemption House staff indicating that petitioner had been removed from their program, but that Redemption House staff later stated that petitioner was going to remain in the program. At the hearing, the circuit court inquired of petitioner whether she wished to remain at Redemption House or find a new program to continue her substance abuse treatment. Petitioner stated that she did not want to lose the three months she had in the program at Redemption House, but if she stayed, she was "about to have a nervous breakdown" due to unspecified "drama" with other patients there. The guardian stated that she did not feel like petitioner was making progress at Redemption House and should be relocated. In response to petitioner's concern, the circuit court stated that if petitioner was not using drugs during her time at Redemption House, then her three months there would not be "lost" because three clean months would inure to her benefit in her on-going improvement period. At the conclusion of the hearing, the circuit court permitted the parties to decide whether to relocate petitioner to a new treatment program.

In September of 2015, the DHHR noted in a court summary that petitioner had started a new treatment program in August of 2015 at New Beginnings. The DHHR claimed that "it has been reported that she is doing very well" in the New Beginnings program. The circuit court held another review hearing in December of 2015. At that hearing, the parties informed the circuit court that petitioner was discharged from the New Beginnings program after she and another patient were married, which was reportedly in violation of a program rule. According to the DHHR worker, New Beginnings would not provide petitioner with a certificate of completion due to her discharge. Petitioner argued that she had been drug-free for more than one year and was working full time at Pizza Hut. Given the circumstances, the circuit court granted petitioner a dispositional improvement period.

In March of 2016, the circuit court held a review hearing.[3] In its court summary prepared prior to the hearing, the DHHR indicated the petitioner remained employed at Pizza Hut and that

_____

[3] While the table of contents in the appendix record lists the transcript of the March 18, 2016, review hearing, the transcript does not actually appear in the appendix contents.

visits between petitioner and the children were going well. At the hearing, however, while the DHHR worker stated that petitioner "appeared to be doing well," evidence was presented that there was an unsubstantiated concern that petitioner was using drugs. Further, it was reported that petitioner had, in fact, been terminated from her employment. The circuit court did not extend her improvement period and scheduled the matter for disposition. At the date of the hearing, petitioner was screened for drug.

At the dispositional hearing held in May of 2016, the circuit court heard evidence that petitioner tested positive for cocaine on March 18, 2016. Further, there was evidence that petitioner refused to submit to a drug screen on at least one other occasion in March of 2016. Petitioner admitted at the hearing that she avoided a drug screen in March of 2016 because she knew she would test positive. Evidence also established that petitioner was incarcerated at the time of the hearing due to a probation revocation proceeding. She allegedly failed to report to the probation department on multiple occasions and failed to report a change of address as required. It was shown that if her probation were revoked, petitioner faced a potential sentence of one to three years in prison. The DHHR also presented evidence that petitioner had a prior abuse and neglect proceeding involving the oldest child, B.S., but after extensive services, the child was returned to her. By order entered on June 15, 2016, the circuit court found that clear evidence supported the termination of petitioner's parental rights to the children. The circuit court noted that petitioner had twenty-one months of services in her prior abuse and neglect proceeding and that she had fourteen months of services in this proceeding. The circuit court concluded that, despite the years of parental-improvement services she had received, petitioner's treatment was not successful. As such, petitioner's parental rights to both children were terminated. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d

3

531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner first argues that her termination of parental rights should be reversed because she was penalized for relying on the MDT's requirement that she attend Redemption House, which was a program that she claims offered ineffective treatment through no fault of her own. Petitioner claims that she lost three months of her improvement period when she relocated from Redemption House to a new facility. Initially, we note that petitioner provides no authority in support of this assignment of error, with the exception of the standard of appellate review. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, Chief Justice Menis E. Ketchum specifically noted that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented" are not in compliance with this Court's rules.

Moreover, we find no evidentiary support in the record on appeal that petitioner was "penalized" for her time at Redemption House. Although concerns were raised as to the effectiveness of that program at the June of 2015 review hearing, the circuit court informed petitioner that her drug-free three months in that program would continue to provide her a benefit as they would demonstrate her ability to remain "clean." Importantly, however, petitioner did not remain clean during the lengthy services and drug treatment she received after relocating from Redemption House. In the time between her discharge from Redemption House in the summer of 2015 and her ultimate termination of parental rights in June of 2016, petitioner failed to complete a second drug treatment program due to her voluntary decision to marry another patient of that program and she tested positive for cocaine. Based on our review, we find no factual support for petitioner's contention that she "lost" three months on her improvement period while attending Redemption House given that she was provided lengthy services thereafter, which she failed. As petitioner's claim lacks factual support, we find no merit to her first assignment of error.

Petitioner's second assignment of error is that the circuit court erred in terminating her parental rights to the children without employing a less-restrictive dispositional alternative. While petitioner argues that the circuit court should have terminated only her custodial and guardianship rights, the Court does not agree. In addressing a circuit court's termination of parental rights, we have held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Further, West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially

4

corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" Upon making the findings that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and that termination is necessary for the welfare of the children, circuit court are directed to "terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent[.]" *Id*. at § 49-4-604(b)(6).

In this case, petitioner had more than one year of services and drug treatment in which time she could have substantially corrected the conditions of neglect and abuse herein. However, during that time, petitioner voluntarily chose to violate the rules of her drug treatment program by marrying another patient, for which she was discharged from that program without having completed it. While petitioner was free to make such a decision, the circuit court was similarly within its discretion to consider the same at the time of disposition. There was also evidence at the dispositional hearing that petitioner tested positive for cocaine while on her improvement period; intentionally avoided another drug screen because she knew she would test positive; was incarcerated pending a probation revocation proceeding for multiple alleged probation violations; was potentially facing a three-year prison term for criminal child neglect; and was terminated from her employment. Given these circumstances, the evidence clearly established that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that the children's welfare required termination for the purpose of achieving their permanent placement. Accordingly, we find no error in the termination of petitioner's parental rights below.

For the foregoing reasons, we hereby affirm the circuit court's June 15, 2016, order.

Affirmed.

**ISSUED**: November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II