# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: A.A.-1 and A.A.-2

No. 16-0622 (Marion County 15-JA-47 & 15-JA-48)

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father M.A., by counsel Scott A. Shough, appeals the Circuit Court of Marion County's June 1, 2016, order terminating his parental rights to four-year-old A.A.-1 and five-year-old A.A.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Susan L. Riffle, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent[2] and terminating his parental rights to the children based solely on his relationship with a woman who previously had her parental rights to her children involuntarily terminated.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2015, the DHHR filed an abuse and neglect petition against petitioner, the children's mother, and a step-parent. In its petition, the DHHR alleged that the children's mother was incarcerated, leaving the children in the care of the step-parent who abused drugs and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, as the children share the same initials, we refer to them as A.A.-1 and A.A.-2. It should also be noted that the proceedings below involved another child who is not petitioner's biological child. As petitioner seeks an appeal as to A.A.-1 and A.A.-2 only, we address only those two children in this memorandum decision.

[2]While the parties refer to petitioner as both an abusing and a neglectful parent, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse *or neglect*." [Emphasis added.] As such, the Court will refer to petitioner as an "abusing parent" where necessary in this memorandum decision.

became intoxicated while attempting to supervise the children. The DHHR further alleged that petitioner failed to provide for the children and was restrained from contacting them due to an order of the Family Court of Marion County.

In March of 2016, the DHHR amended its petition and added allegations that the family court entered a protective order restraining petitioner's contact with the children because he exposed them to his live-in girlfriend, P.B., who was found to be an on-going danger to the children. The DHHR stated that P.B. was an inappropriate caretaker and that there was a no-contact restraining order in place in Marion County that prevented P.B. from having contact with the children. The DHHR further alleged that petitioner was informed that P.B. could not be around his children, but he continued to reside with P.B. and to defend her as an appropriate caretaker to the multidisciplinary team ("MDT"). For those reasons, the DHHR alleged that petitioner failed to protect his children from further exposure to P.B.

Later that month, the circuit court held two adjudicatory hearings. At the first hearing, the guardian provided evidence that the family court entered a protective order in 2014 against petitioner for making arrangements to kidnap the children from their mother and abscond to a different state. The guardian further indicated that the family court entered a temporary order in 2015 prohibiting P.B. from contacting petitioner's children due to her prior involuntary terminations of parental rights to her own children. Several witnesses testified that petitioner believed that P.B. was an appropriate caretaker for his children, despite his knowledge that she had multiple prior involuntary terminations of her parental rights "spread out through a wide range of time" and two orders prohibiting her from contacting his children. In his defense, petitioner testified that he and P.B. ended their relationship in February of 2016 (days before the hearing), and she moved to the State of Arizona never to return. He further testified that he was not given an exact reason as to why she could not be around his children, and he only knew P.B. to be "loveable and respective of my kids." He explained that it was his understanding that P.B.'s prior terminations were based on her former methamphetamine addiction, but he knew her to be drug-free during their relationship. Due to time constraints with the circuit court's docket, the adjudicatory hearing was continued following petitioner's direct testimony.

At the second adjudicatory hearing held in late March of 2016, petitioner did not appear in person, but he was represented by counsel. Petitioner's counsel informed the circuit court that he had no contact with petitioner since the time of the prior hearing, and petitioner had not attended the most recent MDT meeting. The circuit court proceeded with the adjudicatory hearing. Petitioner's counsel indicating that he had no additional evidence to present, and the DHHR called two rebuttal witnesses. The first rebuttal witness, the foster parent of one of the children, testified that the children were afraid of P.B. and stated that they did not want to be around her. She explained that one child shook when P.B.'s name was mentioned. Based on the evidence presented, the circuit court found that petitioner was an abusing parent because he continued to threaten to expose the children to P.B., despite knowledge of her extensive history of losing parental rights and two court orders that found her to be a danger to his children. The circuit court also noted that it found petitioner's claim suspect that his relationship with P.B. ended days before the first adjudicatory hearing at which time she moved out of state.

In May of 2016, the circuit court held two dispositional hearings. At those hearings, petitioner was present in person and by counsel. The evidence revealed that petitioner failed to attend any of his scheduled therapy sessions since mid-March of 2016, and that he failed to attend the second adjudicatory hearing in late March of 2016 because he traveled to Arizona to be with P.B. Further, a DHHR worker testified that he witnessed petitioner and P.B. walking together in Marion County in April of 2016. Thereafter, petitioner reportedly informed the MDT that P.B. had returned to Marion County. Given petitioner's actions and his continued involvement with P.B. even after the adjudicatory hearings, the DHHR worker testified that no services could be offered to petitioner that would correct the underlying issues of abuse and neglect. Therefore, the DHHR recommended termination of petitioner's parental rights. There was also evidence that petitioner permitted his children to have contact with P.B. prior to the instant abuse and neglect petition's filing, despite knowledge of her prior terminations. In his defense, petitioner testified that he still believed that P.B. was an appropriate caretaker for his children. He also admitted that he and P.B. were in an on-going relationship and that they continued to reside together. The circuit court took the matter of disposition under advisement. By order entered on June 1, 2016, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. As such, the circuit court terminated petitioner's parental rights to the children. This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner first argues that the circuit court erred in adjudicating him as an abusing parent based solely on his relationship with P.B. Petitioner claims that the evidence presented below does not satisfy the statutory definitions for "abused child" or "neglected child," although he acknowledges that the circuit court's adjudication is proper if the evidence satisfies either the definition. West Virginia Code § 49-1-201 defines a "neglected child" as a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education[.]" Moreover, this Court has addressed the impact and propriety of a circuit court's finding that a parent failed to care for a child based on continued association with a person determined to be an inappropriate caretaker. In *In re A.T. and A.P.*, we affirmed the termination of parental rights where a parent

> refused to acknowledge that her continued association with an inappropriate individual constitutes a failure on her part to properly care for her children's safety and well-being. In fact, her arguments on appeal highlight her continued refusal to acknowledge that her actions endangered her children.

*In re A.T. & A.P.*, No. 12-0054, 2012 WL 3155779, at *6 (W.Va. June 25, 2012) (memorandum decision).

In the case sub judice, petitioner argues that his actions did not satisfy the statutory elements for abused or neglected children because (1) he did not have physical custody of his children at any relevant time; (2) no actual harm came to the children due to his relationship with P.B.; and (3) P.B.'s prior terminations did not speak to her current caretaking abilities. Following our review, we find that the evidence satisfies the requirements that petitioner neglected his children.

First, we disagree with petitioner's claim that his lack of physical custody of the children at all times relevant to these proceedings prevented him from committing child neglect. As noted above, a "neglected child" is one whose mental health is threatened by a parent's "refusal, failure or inability . . . to supply the child with necessary . . . supervision[.]" Under that definition, while lack of physical custody may not alone constitute neglect, it does not foreclose such a finding given the totality of the circumstances. As in this case, a parent without physical custody may fail to provide proper supervision such that the child's mental health is threatened. Here, the circuit court found in its adjudicatory order that petitioner failed to acknowledge that P.B. was an inappropriate caretaker and that he continued his relationship with her to the detriment of his children. The circuit court specifically concluded in its order that petitioner's relationship with P.B. "prevented him [from] having care, custody, and control of [his children.]"

Second, we disagree with petitioner's claim that no actual harm came to the children in this matter. Testimony at the adjudicatory hearing revealed that at least one child was afraid of P.B. and trembled at the mention of her name. The circuit court did not ignore this testimony as to the child's mental health, nor do we. Moreover, at the time of the filing of the amended petition, petitioner's decision to remain with P.B. delayed any potential reunification or potential increased visits with his children for months. During that time, the children remained in foster

4

care uncertain as to their permanent placement.[3] The circuit court was also cognizant of petitioner's continued claims that P.B. presented no danger to his children, notwithstanding his knowledge of her prior terminations and the two court orders preventing her from contacting his children. The circuit court found that petitioner's claim that he ended his relationship with P.B. days before the adjudicatory hearing was "suspect," and the circuit court did not credit that claim. For these reasons, we find that if petitioner had reunified with his children, which was his stated intent at the time of the amended petition's filing, he threatened to expose the children to a person judicially determined to be an inappropriate caretaker at that time. Based on that evidence, we disagree with petitioner's characterization that the children suffered no harm or threat of harm in this matter.

Finally, petitioner contends that P.B.'s prior terminations of parental rights were based on circumstances that no longer presented a danger. He claims that he was adjudicated due to "a possible, hypothetical occurrence" as opposed to an actual harm. However, petitioner admitted below that he did not know the full circumstances of petitioner's prior terminations. Based on the evidence presented to the circuit court of P.B.'s prior terminations and the two court orders prohibiting her from contacting the children, we find that the evidence supports a finding that P.B. constituted a threat to the children's welfare at that time. Therefore, accordingly, we find no merit to petitioner's claim that the circuit court erred in adjudicating him as an abusing parent.

Petitioner's second ground for appeal is that the circuit court erred in terminating his parental rights to the children based solely on his relationship with P.B. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon the findings that there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected in the near future and the children's welfare requires termination. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" As noted above, this Court has affirmed the termination of parental rights based on a parent's failure to severe a relationship with an inappropriate person. *See In re A.T. & A.P.*, No. 12-0054, 2012 WL 3155779 (W.Va. June 25, 2012) (memorandum decision). In *In re A.T. & A.P.*, we held that

> [b]ased upon petitioner's refusal to comply with the terms of the family case plan and to acknowledge the basic allegations regarding her association with J.B., the circuit court did not err in terminating petitioner's parental, custodial, and guardianship rights.

---

[3]There was testimony from one DHHR worker at the adjudicatory hearing that reunification would not have been recommended even if petitioner ended his relationship with P.B. shortly before the filing of the amended petition. However, that DHHR worker also stated that reunification would have been possible had the relationship ended at the beginning of these proceedings when petitioner was initially warned as to P.B.'s background.

Therefore, a parent's refusal to comply with the requirement that the parent sever a relationship with a person deemed inappropriate to have around children may be sufficient to support a finding as to the reasonable likelihood that the conditions of abuse or neglect may be corrected.

In the case before us, petitioner continued to defend P.B. at the dispositional hearings as an appropriate caretaker for his children. At that time, he admitted that he and P.B. were still in a relationship and that they resided together. Therefore, it is clear that petitioner had not corrected the conditions of neglect at the time of the dispositional hearings. By his own testimony, he acknowledged that he had no intention of severing his relationship with P.B. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we hereby affirm the circuit court's June 1, 2016, order.

Affirmed.

**ISSUED**: November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II