# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **J.M.**

**Nos. 16-0511 and 16-0745** (Ohio County 16-CJA-9)

**FILED**

**November 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

In these consolidated cases, petitioner Father J.F., by counsel Brent A. Clyburn, appeals the Circuit Court of Ohio County's April 27, 2016, and July 8, 2016, orders adjudicating petitioner as an abusing parent[1] to seven-year-old J.M.[2] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response also in support of the circuit court's order and a supplemental appendix.[3] Petitioner filed a reply. On appeal, petitioner argues that there was insufficient evidence presented at the adjudicatory hearings to support the circuit court's findings that he neglected the child.

---

[1]Petitioner refers to the circuit court's finding that he was a "neglectful parent." While the circuit court's finding was based on neglect, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse *or neglect*." (Emphasis added.) As such, we refer to petitioner as an "abusing parent" throughout this memorandum decision.

[2]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). We also note that petitioner filed two related appeals in this matter because the circuit court entered two adjudicatory orders addressing the same child. As these appeals stemmed from the same proceedings and involved the same parties and issues, this Court consolidated them by order entered on August 17, 2016.

[3]Both petitioner's brief and the guardian's response failed to include a section regarding the current status of the child, plans for continued placement of the child, and status of the parental rights of the child's parents. This information is of the utmost importance to this Court in these proceedings. We refer petitioner's counsel and the guardian to Rule 11(i) of the West Virginia Rules of Appellate Procedure, which provides that briefs in abuse and neglect appeals "filed by the parties (including the guardian ad litem) *must* contain a section . . . setting forth the current status of the minor children and any plans for permanent placement, and the current status of the parental rights of all the children's parents." (Emphasis added.) While we decline to employ its use in this matter, we caution petitioner's counsel and the guardian that Rule 10(j) provides for the imposition of sanctions where a party's brief does not comport with the Rules.

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR filed an abuse and neglect petition against petitioner and the child's mother.[4] In the petition, the DHHR alleged that the child's mother abused drugs in the child's presence and that petitioner had failed to provide for the child as evidenced by a child support arrearage. The DHHR claimed that it attempted to locate and contact petitioner when it removed the child from his mother, but petitioner failed to return the DHHR's messages. The DHHR further alleged that petitioner had an extensive criminal history, including at least three arrests for driving under the influence ("DUI") (one of which resulted in a death). In February of 2016, the circuit court held a preliminary hearing. The circuit court granted temporary custody of the child to the DHHR pending further proceedings. Petitioner did not appear in person at the hearing, but he was represented by counsel. Reportedly, petitioner arrived at the courthouse after the hearing had ended.

In March of 2016, the DHHR filed an amended petition against petitioner. In that amended petition, in addition to the previously stated allegations, the DHHR alleged that petitioner had a long-term alcohol addiction that affected his parenting and that he continued to consume alcohol. The DHHR also claimed that petitioner failed to acknowledge his alcohol abuse as a problem, despite multiple serious automobile accidents and arrests allegedly related to his alcohol use. The DHHR specifically set forth in the amended petition that

> [the child's] physical or mental health is harmed or threatened by [petitioner's] present refusal, failure or inability to supply the [child] with necessary food, clothing, shelter, supervision, medical care or education when such refusal, failure or inability is not due primarily to a lack of financial means on [petitioner's] part.
>
> . . . [the child is] presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian.
>
> . . . [petitioner] lack[s] parenting skills, parenting knowledge or motivation in that [he] will not and do[es] not provide physical care, protection, supervision and psychological support appropriate to the [child's] age[] and stage[] of development.

---

[4]In mid-November of 2016, the guardian filed an updated statement with this Court, pursuant to Rule 11(i) of the West Virginia Rules of Appellate Procedure, regarding the current status of the child's mother. In that updated 11(i) statement, the guardian claimed that the child's mother passed away in early November of 2016 reportedly following a relapse into drug and alcohol use.

In April of 2016, the circuit court held an adjudicatory hearing on the amended petition. At the hearing, petitioner testified that he had a court-ordered custody arrangement whereby he got the child several weekends per month. He claimed that he possibly informed the family court of the mother's drug use in approximately 2013, but he could not definitely recall. Petitioner testified that alcohol had been a problem for him in the past, resulting in multiple DUIs over the course of many years and an ATV accident in 2013 that caused him substantial physical harm; that he continued to drink alcohol, but that his current alcohol use was minimal and that he did not drink around the child; that he had not sought alcohol treatment; and that he knew the child's mother abused drugs, but he did not take any legal action to remove the child from her care, custody, and control. The DHHR worker testified at that hearing that petitioner "is in [child support] arrearages due to his alcoholism getting him into another ATV accident, which caused him not to be able to provide for his child. He was also allowing [the child] to go with his mother, which he was aware of her drug and alcohol history." Petitioner's child support arrearage was said to be more than $4,000. The DHHR worker also stated that petitioner did not produce any court pleadings or orders demonstrating that he attempted to remove the child from the mother's home to protect the child from exposure to drugs. By order entered on April 27, 2016, the circuit court found that petitioner had neglected the child due to the continued, untreated alcohol abuse and for allowing the child to be exposed to his mother's drug use. Petitioner appealed the circuit court's April 27, 2016, order to this Court (W.Va. Supreme Court Case No. 16-0511), and his appeal was perfected on July 5, 2016.

In June of 2016, the DHHR filed a second amended petition against petitioner. In the second amended petition, in addition to the prior allegations, the DHHR alleged that petitioner was arrested on May 23, 2016, for driving on revoked license for DUI, fleeing, and reckless driving. The DHHR argued that petitioner's arrest in May of 2016, and potential incarceration for the same prevented him from providing for the child's emotional, physical, and financial needs.

Later that month, the circuit court held an adjudicatory hearing on the second amended petition. At the hearing, a DHHR worker and an Ohio County Sheriff's Deputy testified as to the allegations in the second amended petition. The DHHR worker also testified that petitioner rejected a case plan with terms and conditions for a potential improvement period because petitioner did not believe that he had neglected the child. Instead, petitioner informed the DHHR worker and the multidisciplinary team ("MDT") that he wished to pursue his appeal of the circuit court's finding of neglect. The DHHR worker also stated that at no time had petitioner ever lived with, or provided for, the child on a regular basis. By order entered on July 8, 2016, the circuit court found that petitioner had neglected the child based on his current criminal behavior, his "pattern of criminal and reckless behavior[,] and [his] continued refusal to acknowledge his alcohol consumption as an issue that need treatment[.]" Petitioner appealed the circuit court's July 8, 2016, order to this Court (W.Va. Supreme Court Case No. 16-0745), and his appeal was perfected on September 6, 2016. Petitioner's appeals were consolidated as noted above.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

3

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law provides that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner argues that the circuit court erred in its adjudicatory orders by finding in both instances that he neglected the child. Petitioner asserts that the evidence presented at the adjudicatory hearings was insufficient to support findings of neglect. West Virginia Code § 49-1-201 defines a "neglected child" as a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education" not based solely on the parent's lack of financial means.

In this case, as to the first adjudication in April of 2016, the DHHR alleged that petitioner threatened harm to the child by his prior and current alcohol abuse; his pattern of criminal/reckless behavior as evidenced by his extensive alcohol-related arrests/incidents from approximately 2000 to 2014; his failure to pay child support or otherwise provide for the child; and his failure to supply the child with food, clothing, shelter, supervision, medical care, or education. At the first adjudicatory hearing, petitioner admitted that he knew the child's mother abused drugs while the child was in her custody, and there is no indication in the record that he took any action to protect his child from that exposure. Petitioner's claim that he may have informed a family court in 2013 does not preclude a finding by the circuit court in 2016 that he refused to protect his seven-year-old child from further exposure to drug activity. Moreover, petitioner admitted that he was employed, yet he provided no reasonable explanation for failing to provide child support resulting in an arrearage of more than $4,000. At the second adjudicatory hearing, the DHHR again presented evidence of petitioner's alcohol use and failure to provide for the child as alleged in its second amended petition. Additionally, the DHHR presented evidence that petitioner was arrested for multiple alleged criminal acts in May of 2016 that would potentially result in his incarceration.

4

Given the clear and convincing evidence of those grave concerns and petitioner's dangerous history with, and continued use of, alcohol, we find no error in the circuit court's orders regarding adjudication. Petitioner refused to protect or properly supervise his child knowing that the child's mother exposed him to drug use. There was simply no evidence that petitioner sought to modify his parenting arrangement with the mother for the purpose of removing the child from that environment. While petitioner claimed that he informed a family court of the mother's drug use years before the petition's filing, he provided no evidentiary support for such a claim beyond his self-serving testimony. The circuit court was within its discretion to discount that testimony and credit the DHHR worker. Further, petitioner failed to provide for the child, as evidenced by the substantial child support arrearage. Therefore, we find adequate evidentiary support for the finding that petitioner's failures created the threat of harm to the child's mental and physical health. We further find no evidentiary support for petitioner's claim on appeal (without citation to the record) that his child support arrearages and other neglect stem solely from his lack of financial means. Petitioner testified that he was employed, and he provided no evidence of financial hardship as the reason for his failures to seek custody of the child or pay child support. Simply because a child support arrearage exists does not prove that a parent's failure to pay is due solely to financial hardship. Based on our review of the record on appeal, the parties' arguments, and pertinent legal authority, the circuit court committed no clear error in finding that circumstances of this case meet the statutory definition of a "neglected child."

For the foregoing reasons, we find no error in the circuit court's April 27, 2016, and July 8, 2016, orders, and we hereby affirm the same.

Affirmed.

**ISSUED**: November 21, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II