**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**April 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **K.W., K.M., D.M. and S.H.**

**No. 16-0395** (Wood County 13-JA-123, 13-JA-124, 14-JA-118, & 15-JA-176)

**MEMORANDUM DECISION**

Petitioner Mother F.M., by counsel Thomas B. Karr, appeals the Circuit Court of Wood County's March 22, 2016, order terminating her parental rights to five-year-old K.W., three-year-old K.M., two-year-old D.M., and one-year-old S.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Courtney L. Ahlborn, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights to the children because it failed to consider less-restrictive alternatives to termination.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2013, the DHHR filed an abuse and neglect petition against petitioner alleging that she abused K.W. and K.M. by attempting suicide while the children were in her custody. Petitioner reportedly sought treatment soon thereafter, but she failed to follow through with that treatment. The DHHR further alleged that petitioner exposed the children to domestic violence in the home.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

In January of 2014, petitioner stipulated to the allegations in the petition. The circuit court accepted her stipulations to abuse and neglect, adjudicated her as an abusing parent, and, thereafter, granted her a post-adjudicatory improvement period. In March of 2014, petitioner was evaluated in the office of Dr. Timothy Saar, a licensed psychologist. In the resulting psychological report, petitioner was diagnosed with personality disorder and a treatment program was recommended. It was recommended that petitioner attend therapy, classes for parenting and adult life skills, and a domestic violence program. It was also noted in the psychological report that petitioner's prognosis was "guarded" and that she failed to acknowledge her prior stipulations of child abuse and neglect. The psychological report provided a goal for petitioner, which was to "illustrate that she has accepted, internalized, and used the skills she has learned."

In late 2014, D.M. was born. Thereafter, the DHHR filed an amended abuse and neglect petition that included D.M. as an abused and neglected child, noting that the concerns regarding petitioner's parenting from the initial abuse and neglect petition remained unresolved. In December of 2014, petitioner was granted a dispositional improvement period, as her post-adjudicatory improvement period (and extension thereof) had naturally expired. In February of 2015, the circuit court held a review hearing. At that hearing, due to concerns raised by the guardian, the circuit court ordered petitioner to submit to random drug screens.

In April of 2015, the circuit court held another review hearing. At that hearing, the DHHR noted that petitioner's parenting provider and visitation supervisor stopped providing her services in March of 2015 due to her repeated cancellations. The DHHR further noted that petitioner's attendance in her therapy sessions had declined; that she remained at risk for domestic violence, despite having completed counseling on the subject, due to her lack of insight, impulsive nature, and other traits; and that she was argumentative with the multi-disciplinary team. Additionally, the circuit court heard evidence that petitioner tested positive for phenobarbital on one drug screen. At the conclusion of the hearing, the circuit court ordered that the matter be scheduled for another hearing in the summer of 2015 and directed the DHHR to continue to provide her with services.

Thereafter, the guardian filed a report in which she noted that petitioner was pregnant for the second time during the pendency of these proceedings. In her report, the guardian concluded that petitioner failed to focus on the best interests of her children. The guardian recommended that the case be scheduled for a final dispositional hearing. The DHHR also filed a report in which it argued that petitioner failed to fully comply with services and was involved in a relationship that had a negative effect on her ability to parent. As such, the DHHR asked the circuit court to schedule the matter for a final dispositional hearing.

In late 2015, S.H. was born. Thereafter, the DHHR filed an amended abuse and neglect petition that included S.H. as an abused and neglected child, noting that petitioner's issues from the initial abuse and neglect petition remained unresolved.

From July of 2015 to January of 2016, the circuit court held three dispositional hearings.[3] During those hearings, the circuit court heard evidence that petitioner was not fully compliant

---

[3]Discovery issues and multiple continuances delayed disposition in this matter.

with her services. Evidence established that petitioner's first visitation provider discharged her as a client due to sporadic attendance and other concerns. The DHHR caseworker testified that the same concerns alleged in the initial abuse and neglect petition remained years later, and petitioner's therapist testified that she made some progress, but she still had "some work to do." Petitioner's therapist estimated that she required approximately six months of treatment (if not more) to resolve the underlying concerns.

By order entered on March 22, 2016, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the issues of abuse and neglect in the near future. The circuit court further found that the children (all under the age of five) required continuity of care in a stable and permanent home. As such, the circuit court concluded that reunification between petitioner and her children was not in the children's best interests. As such, petitioner's parental rights to the children were terminated.[4] This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 5     40 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va.

---

[4]According to the DHHR and guardian, K.W. is placed in a non-relative foster home with the permanency plan of adoption into that home, but that K.W.'s paternal grandmother has moved to intervene to obtain custody. The biological father of K.W. is R.W., and his parental rights to K.W. were terminated below. According to the guardian ad litem (at the time she filed her brief), K.M. was in the custody of her biological father (M.W.) where she will remain; D.M. was also in the custody of his biological father (W.M.) where he will remain; and the youngest child, S.H., was placed with her maternal grandparents who intended to adopt or acquire legal guardianship of her. The parental rights of S.H.'s biological father (R.H.) were terminated below. The biological fathers of K.M. and D.M. maintain their parental rights and have custody of their respective children. The guardian notes that K.M. and D.M. were doing well with their respective fathers.

478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner argues that the circuit court erred in terminating her parental rights to the children without imposing a less-restrictive dispositional alternative to termination. West Virginia Code § 49-4-604(a)(6) provides that circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. Under West Virginia Code § 49-4-604(c)(3), "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less[-]restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

In this case, evidence clearly supported the finding that petitioner failed to fully comply with services designed to correct her underlying issues and to reunify her with her children. The circuit court heard evidence that petitioner only sporadically attended her services and that her first visitation provider discharged her as a client due to her lack of adequate attendance and other concerns. Further, the DHHR caseworker testified at the final dispositional hearing that petitioner had not corrected the underlying issues that led to the filing of the initial abuse and neglect petition, despite being granted years of services to achieve that goal. Moreover, at the final dispositional hearing, petitioner's therapist testified that additional treatment would be necessary and would require at least six months, if not longer. Under these circumstances, it is clear that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. Petitioner failed to adequately respond to or follow through with rehabilitative efforts, and her continued treatment would take a substantial amount of additional time. It is also clear that termination was necessary for the children's welfare, given the children's need for permanency after years of uncertainty in this matter. Based on those findings, we find no error in the circuit court's termination of petitioner's parental rights without imposing less-restrictive dispositional alternatives.

For the foregoing reasons, we hereby affirm the circuit court's March 22, 2016, order.

Affirmed.

**ISSUED**: April 10, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker