STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

*In re* A.L.

No. 18-0254 (Hampshire County 17-JA-38)

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father S.L., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's February 9, 2018, order terminating his parental rights to A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joyce E. Stewart, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights instead of continuing the dispositional hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 29, 2016, the DHHR filed a petition against the mother alleging that she abused and neglected children that are not at issue in this appeal. At the time the petition was filed, the mother reported that petitioner was the biological father of one of the children. However, petitioner was later dismissed from the petition upon the return of paternity test results that showed no probability that he was the biological father of that child. In June of 2017, the mother gave birth to petitioner's child, A.L. The child was born addicted to Suboxone due to the mother's substance abuse during her pregnancy. The DHHR filed an amended petition that named petitioner as the respondent father of A.L. and alleged that he had knowledge of the mother's substance abuse during her pregnancy.

On July 25, 2017, the circuit court held an adjudicatory hearing during which petitioner stipulated to the allegations of abuse and neglect. Accordingly, petitioner was adjudicated as an abusing parent and the circuit court granted him a post-adjudicatory improvement period. On

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

November 29, 2017, the circuit court held a status hearing. The DHHR informed the circuit court that petitioner continued to test positive for illegal substances and that if he continued to test positive the DHHR would file a motion to terminate his improvement period. The circuit court admonished petitioner for his continued substance abuse. According to the DHHR, following the November 29, 2017, hearing, petitioner continued to test positive for Suboxone without a prescription.

On February 5, 2018, the circuit court held a dispositional hearing. Petitioner did not appear for the hearing, but his counsel explained that he had received actual notice of the hearing. The mother testified that she informed petitioner of the February 5, 2018, hearing date. She further testified that petitioner told her that he had not heard anything from his attorney. The circuit court denied counsel's motion for a continuance upon its finding that petitioner had actual notice of the hearing and chose not to appear. The circuit court also noted that petitioner failed to appear at the last hearing in the matter. Over the objection of petitioner's counsel, the circuit court proceeded with the dispositional hearing.

The DHHR presented testimony that petitioner's adult life skills and individualized parenting sessions were terminated due to his noncompliance in January of 2018. A DHHR worker testified that she explained to petitioner that his services would be terminated if he continued to fail to attend sessions, and, in response, petitioner told her that he thought Child Protective Services ("CPS") was not "going to give him his daughter anyway." Next, the DHHR presented testimony that petitioner tested positive for substances on all but one screen between July and December of 2017. Petitioner consistently tested positive for Suboxone but did not have a prescription for that drug. Petitioner completed a ten-day detoxification program but declined to enter into an inpatient treatment program. A CPS worker further testified that petitioner cancelled several visits with the child. She explained that petitioner would provide transportation for the mother to visit the child but failed to attend his own visits.

Following the testimony, the circuit court found that petitioner had an addiction to controlled substances that seriously impaired his parenting skills. The circuit court also found that petitioner failed to participate in the family case plan and services. In its dispositional order, the circuit court found that the child's mother "provided testimony that she told [petitioner] about [the dispositional] hearing and he told her that he was not coming because his lawyer did not tell him about the hearing." Further, the circuit court found that a DHHR worker advised the circuit court that a service provider "sent her a message advising her that [petitioner] was aware of [the dispositional] hearing." Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was in the child's best interests. Petitioner's parental rights were terminated in the circuit court's February 9, 2018, order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]According to the respondents, the child's mother is currently participating in an improvement period. The permanency plan is reunification with the mother and the concurrent permanency plan for the child is adoption in her current foster home.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying his motion for a continuance of the dispositional hearing because he alleges that he did not receive notice of the hearing pursuant to Rule 31 of the West Virginia Rules of Child Abuse and Neglect Proceedings. This rule provides that "[n]otice of the date, time, and place of the dispositional hearing shall be given to all parties, their counsel, and persons entitled to notice and the right to be heard." In support, petitioner argues that this Court has stated, in part, that "[c]ircuit courts must provide the parties with notice of the disposition hearing prior to actually holding the hearing." *In re Travis W.*, 206 W.Va. 478, 483, 525 S.E.2d 669, 674 (1999). Although it is true that petitioner did not receive notice from the circuit court or from his attorney, it is clear from the record that he had actual notice of the hearing. The child's mother testified that she informed petitioner of the February 5, 2018, dispositional hearing. According to the mother, petitioner informed her that he had not heard from his attorney. However, there is no evidence in the record that petitioner ever tried to contact his attorney, the circuit court, or any DHHR worker to inquire about the dispositional hearing. Further, counsel was present at the February 5, 2018, dispositional hearing to represent petitioner's interests.

We have previously held that

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). While petitioner is correct that the Rules of Procedure for Child Abuse and Neglect Proceedings required that he receive notice of the dispositional hearing, we find that petitioner's actual notice of the hearing mitigates

against vacating the dispositional order. While petitioner argues that he should have been granted a continuance of the dispositional hearing due to his alleged lack of notice, we have also held that "[w]hether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion." *Tiffany Marie S.*, 196 W.Va. at 235, 470 S.E.2d at 189. As such, we find petitioner is entitled to no relief.

Further, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) indicates that a situation where there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

Here, petitioner failed to comply with services during his post-adjudicatory improvement period. In fact, his parenting and life skills sessions and drug screening services were terminated due to his noncompliance. Petitioner also tested positive for illegally obtained Suboxone on all but one of his drug screens. Although he completed a ten-day detoxification program, petitioner resumed his illegal use of Suboxone and refused to enter an inpatient treatment facility as recommended by his case plan. Further, petitioner missed several visits with the child. Interestingly, he transported the mother to several of her visits but failed to attend many of his own visits. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n.14, 479 S.E.2d 589, 600, n.14 (1996)(citing *Tiffany Marie S.*, 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Based on this evidence, it is clear there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was in the child's best interest. Therefore, we find no error in the termination of petitioner's parental rights.

Lastly, because the child's mother's abuse and neglect proceedings are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as

to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va. Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 9, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  October 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating

5